IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHAD CORY, ADAM ADAMS, ELEAZAR AGUILAR, LUIS AGUILAR, FELIX ALIPIO, JULIAN BARRERA, JR., MORGAN BAUMGARTNER, RONJON BISWAS, RONALD BLAKEWAY, CLAYTON BOYD, TARA BRAZIEL, ERNESTO CARRERA, CHRISTINA EASON, ROBERT FLORES, ROBERT GIBBS, GORGE GONZALEZ, KENNETH HALL, JR., KRISTOPHER KARSTETTER, ABEL LEAL, JR., LINDSEYMARTIN, ADAM MATHEWS, ZOHAIR MERCHANT, OSCAR MORENO, ROBERT MORENO, CHRISTOPHER MYRES, PHILLIP MYRES, JR., NATHANIEL NEWTON, MICHAEL NIEBER, JOSUE OLEA, JESSICA PAINE, GIANCARLO SARDI, SAMUEL SERANNO, KYESA SCOTT, NATALEE TORRES, CARLOS VEGA, WILLIAM VAN WINKLE, JASON WHITE, JERMAINE WHITE, JOHN WHITE, JR., RODERICK WILLIAMS, RUBEN MAURICIO VASQUEZ, JOSHUA NOAH VASQUEZ, HAYWOOD JOINER, SHAWN LOFTON, DAVID LEE, and JUAN YRENA, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-03-0125 |
| THE CITY OF HOUSTON, C.O. BRADFORD, and MARK AGUIRRE, | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court in this civil rights dispute arising from the August 2002 arrest of Plaintiffs is a Motion for Summary Judgment [Doc. # 83] ("Defendants' Motion") filed by The City of Houston (the "City") and former Chief of Police C.O. Bradford ("Bradford").[1] Plaintiffs have filed a Response [Doc. # 103] ("Plaintiffs' Response"),[2] to which Defendants have filed a Reply [Doc. # 105] and a Motion to Strike Portions of Plaintiffs' Response [Doc. # 106]. These motions are ripe for decision. Having considered the parties' submissions, all matters of record, and the applicable legal authorities, the Court concludes that Defendants' Motion for Summary Judgment should be **granted in part and denied in part**. The Court also concludes that Plaintiffs may not assert new claims in their Response to Defendants' Motion for Summary Judgment, and that Defendants' Motion to Strike should therefore be **granted in part and denied in part**.

I.   **BACKGROUND**

The following facts are alleged in Plaintiffs' Fourth Amended Complaint [Doc. # 67]. On the night of August 17-18, 2002, Houston Police Department ("HPD") officers orchestrated a surprise raid upon the parking lots of a K-Mart retail store and Sonic Drive-In restaurant located at the 8400 block of Westheimer Road in Houston, Texas. Plaintiffs allege that approximately seventy-seven armed police officers, backed up by helicopters, two tow

---

[1]   In addition to the City and Bradford, HPD Captain Mark Aguirre remains a Defendant in this case. All other Defendants have been dismissed.

[2]   Plaintiffs' Response is substantially similar to the plaintiffs' response in a companion case in this Court, *Lopez, et al. v. The City of Houston, et al.,* Civil Action No. H-03-2297 [*Lopez* Doc. # 144].

trucks and jail transports, descended upon the parking lot and indiscriminately arrested Plaintiffs and everyone else on the premises – two hundred seventy-eight people. At the Sonic, HPD officers brandished pistols and shotguns in the faces of customers, verbally abused them, knocked drinks and food from their hands and off their tables, and ordered them to move to a designated location in the parking lot. Those who were eating in their cars were hauled from their vehicles at gunpoint and herded to the designated location. Those at the K-Mart were treated similarly. Police also rounded up the passengers of cars stopped at a traffic light waiting to leave the parking lot. All were forced into a containment area. The officers refused to examine receipts as proof of legal entry on the property or listen to the detainees' explanations. Among those caught up in the raid were children shopping with a parent, an off-duty air traffic controller, and honor students including a class valedictorian.

The detainees were placed under arrest for "attempted trespassing" and handcuffed with tight plastic zip ties. When some complained, officers further tightened the cuffs. As a result, many of the arrestees suffered bruising, swelling, and numbness of the wrists, hands and arms. They were searched. Some of the female arrestees were searched in front of male officers and were the subjects of jests and humiliation. They were divided by sex, with brothers separated from sisters, children from parents. Then the arrestees were forced to sit or kneel for hours on the ground beside garbage bins on the hot summer nights in question. Some needed to use the restroom and were forced to soil themselves when this basic dignity was denied. The last of the arrestees were not transported out of the parking lot until approximately six in the morning. Some suffered dehydration.

The arrestees were transported to jail in hot, overcrowded buses. At the prison, many were forced to wait outside for several hours while those inside were processed. Inside, they were packed body-to-body in holding cells with dangerous criminals. The cells stank of sweat, urine, feces, and vomit, the toilets were open to public view, and were filthy and overflowing. The prisoners faced the Hobson's choice of sitting in filth or standing for the entire length of their confinement. Jail personnel and officers verbally jeered at them. Those who complained were processed last. Those who refused to plead guilty were not taken before a magistrate. Plaintiffs spent differing amounts of time in prison; some were released after as few as four hours; many were imprisoned in excess of twenty hours. The last arrestee remained jailed until Monday morning, August 19, 2002.

Many of Plaintiffs found that their vehicles had been towed from the K-Mart and Sonic parking lots. They had to pay fees to retrieve them. Some vehicles were damaged.

As a warm-up for the K-Mart arrests, on the prior night, August 16-17 2002, HPD officers orchestrated a surprise raid upon the James Coney Island restaurant on the 5700 block of Westheimer Road. During that operation, the officers arrested approximately forty-three patrons. As with the raids of August 17 and 18, HPD officers accused the patrons of "attempted trespassing," but refused to examine their receipts as proof of their status as invitees on the property.

At each of the raids, arresting officers signed arrest affidavits without personal knowledge of facts establishing probable cause to arrest. Plaintiffs claim that the officers knew or should have known that they were not guilty of attempted trespassing. Of the two

hundred seventy-eight arrests made at the K-Mart/Sonic and the forty-three arrests at the James Coney Island, just one was for misdemeanor possession of marijuana and one was for parole violation. All the "attempted trespassing" charges against the rest of the arrrestees were ultimately dismissed as wrongful arrests. There were no arrests for public intoxication, vandalism, drag racing, trespassing, or any other crime. Plaintiffs allege that their arrests were made pursuant to an HPD exercise dubbed "Operation ERACER," mass arrests on August 16, 17, and 18, 2002 intended to target illegal street racing. All Plaintiffs allege that the operations were conducted by Captain Mark Aguirre with the knowledge and express or implied authorization of Chief C.O. Bradford. Plaintiffs further allege that the arrests were made pursuant to an express or implied policy of HPD known as "zero tolerance." Pursuant to this alleged policy, HPD targets an area and arrests anyone and everyone in the area without regard for probable cause or evidence of criminal activity.

There is no evidence before the Court that any street racing occurred on the evenings in question.

Plaintiffs assert causes of action pursuant to 42 U.S.C. § 1983 against the City, Bradford, and Aguirre for constitutional civil rights violations. Plaintiffs also assert a state law cause of action against Bradford and Aguirre for the intentional tort of false arrest and imprisonment.

## II.  DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFFS' RESPONSE

The Court issued a Memorandum and Order dated December 13, 2004 [Doc. # 77], dismissing Plaintiffs' § 1983 claims based on alleged violations of Plaintiffs' First

Amendment associational rights, Fourteenth Amendment due process rights, and Fourth Amendment rights to be free from excessive force. The Court also dismissed Plaintiffs' "failure to supervise" and "failure to protect" claims. Plaintiffs did not amend their Complaint to reflect these dismissals. Defendants now object to Plaintiffs' Response to Defendants' Motion for Summary Judgment, which incorporates arguments defending the claims that the Court has already dismissed.[3] The Court declines to resurrect these claims on summary judgment. The Court strikes the portions of Plaintiffs' Response addressing claims that no longer are this case. However, Defendants' Motion to Strike is overbroad. Defendants seek to strike "all the claims plaintiffs address except the Fourth Amendment seizure claims against the City and the false arrest claims against Bradford."[4] Plaintiffs' Fourth Amendment seizure claims against Bradford are still pending, having survived Defendants' Motion to Dismiss. Those portions of Plaintiffs' Response addressing Plaintiffs' Fourth Amendment seizure claims against Bradford will be considered. Defendants' Motion to Strike is therefore granted in part and denied in part.

## III.   SUMMARY JUDGMENT STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and

---

[3]   Plaintiffs' Response largely mirrors the response filed in a companion case, *Lopez, et al. v. The City of Houston, et al.,* Civil Action No. H-03-2297 [Doc. # 144], but adds seven additional paragraphs.

[4]   Defendants' Motion to Strike, at 5.

on which that party will bear the burden at trial. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant meets this initial burden by showing that the "evidence in the record would not

permit the nonmovant to carry its burden of proof at trial." *Id.* If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. (quoting *Smith v. Brenoettsky*, 158 F.3d 908, 911 (5th Cir. 1998)); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that "unsworn pleadings do not constitute proper summary judgment evidence," quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994)). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Id.* Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

## IV.  DISCUSSION

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  Thus to establish liability under § 1983 there must be (1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor.  *Victoria W. v. Larpenter,* 369 F.3d 475, 482 (5th Cir. 2004).

As the Court noted above, Plaintiffs' Fourth Amended Complaint ("Complaint") continues to list five bases for the City's liability under § 1983:  (1) execution of a policy, custom or practice that deprived them of constitutionally protected rights; (2) a custom or practice, not formally approved, but so widespread that it takes the force of law, that deprived them of constitutionally protected rights; (3) "insufficient supervision" of HPD employees resulting in the deprivation of their constitutional rights; (4) express directive, approval, or instruction of Operation ERACER by Bradford, the City's policymaker; and (5) ratification of Operation ERACER by Bradford.  The constitutional rights that Plaintiffs assert in their Complaint arise under (1) the Fourth Amendment's prohibition against unlawful detention and arrest, (2) the constitutional prohibition against the use of excessive force and against custodial abuse, and (3) the Fourteenth Amendment right to due process of law.  As discussed in Part II, *supra,* only Plaintiffs' claims against the City based on the Fourth Amendment's prohibition against unlawful detentions and arrests survived the Court's

December 13, 2004 dismissal order. Plaintiffs' claims for failure to supervise, and claims based on constitutional rights other than the Fourth Amendment, were dismissed.

Plaintiffs' remaining claims – with the exception of the ratification claim – and the summary judgment arguments advanced by the parties in this lawsuit, are substantially similar to those asserted in a companion case, *Brandi Ratliff, et al. v. City of Houston, et al.,* Civil Action No. H-02-3809 ("*Ratliff*").[5] The Court hereby incorporates the analysis and rulings set forth in Parts III.B through IV.B of the Court's *Ratliff* Memorandum and Order dated July 25, 2005, a copy of which is attached to this opinion.

Plaintiffs' Complaint also contains a ratification claim. A municipality can be liable for its "ratification" of employees' acts. *See Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir. 1985) (finding municipal liability based on city's failure to reprimand or discharge officers after their egregious conduct). Although there is absolutely no evidence identified for the Court that Chief Bradford failed to reprimand those who executed Operation ERACER, the City has not moved for summary judgment on this claim in this case. Therefore this claim remains pending in this case at this time.

## V.   **CONCLUSION AND ORDER**

The Court concludes that Plaintiffs may proceed with their § 1983 claim against the City and Bradford based on the facially unconstitutional Jackson Plan. To succeed on this

---

[5] The Court has considered the additional arguments contained in paragraphs 43 to 49 of Plaintiffs' Response, and concludes that they do not alter the Court's holdings as set forth in *Ratliff*.

claim, Plaintiffs must prove that Bradford personally approved the specific Jackson Plan. Plaintiffs may also proceed with their § 1983 claim against the City and Bradford based on a "zero tolerance" custom of detention without reasonable suspicion. To succeed on this claim, Plaintiffs must prove the existence of such a custom and Bradford's knowledge or constructive knowledge of the custom. Plaintiffs may not proceed against the City and Bradford on their claim that Bradford failed to supervise or his staff or failed to protect Plaintiffs. In addition, the Court does not dismiss Plaintiffs' § 1983 ratification claim at this time, although to prevail Plaintiffs will have to show evidence materially more probative than that presented thus far in this and companion cases.

The Court finds there are genuine questions of material fact that preclude summary judgment in Bradford's favor on qualified immunity on Plaintiffs' claims against Bradford based on a policy, practice, or custom of detention without reasonable suspicion.

All other § 1983 claims against the City and Bradford are dismissed. Plaintiffs' state law claims against Bradford are dismissed. It is hereby

**ORDERED** that Defendants The City of Houston and C.O. Bradford's Motion for Summary Judgment [Doc. # 83] is **GRANTED in part** and **DENIED in part**.

SIGNED at Houston, Texas, this **27th** day of **July, 2005.**

_____
Nancy F. Atlas
United States District Judge