# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CHAD CORY, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-0125 |
| | § | |
| CITY OF HOUSTON, *et al.*, | § | |
|     Defendants. | § | |

| | | |
|---|---|---|
| ROLAND T. ROSS, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-03-0126 |
| | § | |
| THE CITY OF HOUSTON, *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

These two civil rights cases arise from a series of incidents that occurred in August 2002.[1] These and other cases have been handled together for pretrial purposes.

Pending before the Court is Plaintiffs' Motion to Reconsider the Court's Dismissal of Plaintiffs' 42 U.S.C. § 1983 Claim against Defendant Bradford ("Motion to Reconsider"), filed September 21, 2007, in the above captioned cases [*Cory* Doc.

---

[1] There are ten cases pending before this Court arising from the 2002 incidents: Civil Action Nos. H-02-3809, H-03-0125, H-03-0126, H-03-2297, H-04-1542, H-04-1543, H-04-1544, H-04-1545, H-04-3221, and H-04-3239.

# 174; *Ross* Doc. # 104]. Plaintiffs seek reconsideration of a Court order entered almost three years ago, on December 13, 2004 [*Cory* Doc. # 77; *Ross* Doc. # 61], striking Plaintiffs' then belated attempt in September 2004, to add to these cases a "failure to supervise" claim against former Houston Police Department Chief C.O. Bradford.

Defendants City of Houston and Bradford have responded to the Motion to Reconsider [*Cory* Doc. # 177; not filed in *Ross*], and Plaintiffs have replied [*Cory* Doc. # 178; *Ross* Doc. # 107]. Upon review of the Motion, Response, and Reply, all pertinent matters of record, and applicable law, the Court concludes that the Motion to Reconsider should be **denied**.

I.   **PROCEDURAL BACKGROUND**

The factual record is set out in more detail in the Court's Memorandum and Order of July 27, 2005 issued on Defendants' motions for summary judgment [*Cory* Doc. # 111; *Ross* Doc. # 82]. Briefly, in August 2002, the Houston Police Department ("HPD") implemented a plan, dubbed Operation E-RACER, as part an effort to combat illegal street racing. In carrying out the operation, HPD detained and arrested hundreds of people located in large parking lots used by establishments such as K-Mart and Sonic Restaurant while the companies were open for business. Plaintiffs, who were among those who were arrested in the sweep, sued the City of Houston ("City") and

many HPD officers, including then Police Chief Bradford, asserting various state and federal constitutional and state law claims arising from these events.[2]

Especially pertinent to the pending motion are the following procedural events: Plaintiffs filed these suits in state court in Harris County, Texas in December 2002. Defendants removed the cases to federal court on January 10, 2003. At a pretrial conference held in February 2003, the Court and the parties agreed on a detailed scheduling order that provided for a pleading amendments deadline of April 30, 2003.[3] On April 30, 2003, Plaintiffs filed an amended complaint in *Ross*[4] and Defendants subsequently filed various motions to dismiss.[5]  By motion filed May 13, 2003,[6] accompanied by a proposed amended complaint,[7] the *Cory* Plaintiffs sought leave to amend because they inadvertently had omitted a plaintiff from their prior pleading. On

---

[2] Eventually, Plaintiffs voluntarily dismissed their claims against the numerous HPD line officers. Plaintiffs continue to sue Bradford and one other former high ranking HPD officer, Mark Aguirre. Claims against Aguirre are not in issue.

[3] *See* Minute Entry Order [*Cory* Doc. # 26; *Ross* Doc. # 22]. The Court also ordered the City to create a document depository at which all parties would be able to review during business hours the extensive initial disclosures and written discovery materials made available by the City. *See id.*

[4] *See* First Amended Complaint [*Ross* Doc. # 30]. The *Cory* Plaintiffs had intended to file an amended complaint at the same time as the *Ross* Plaintiffs, but mistakenly failed to do so. Their "First Amended Complaint" was belatedly filed on June 3, 2003 [*Cory* Doc. # 41].

[5] *See* Motions to Dismiss by Bradford, City of Houston, and Mokwa [*Ross* Docs. # 34, # 35, # 36].

[6] Motion for Leave to File Second Amended Original Complaint [*Cory* Doc. # 37];

[7] Second Amended Complaint [*Cory* Doc. # 38].

June 10, 2003, the Court granted the *Cory* Plaintiffs' request, and the proposed Second Amended Complaint was deemed filed.[8]  Defendants then moved to dismiss the *Cory* Second Amended Complaint.[9]  Neither the *Cory* nor the *Ross* Plaintiffs sought leave to add, nor did they plead, any failure to supervise claim against Bradford or the City in these April/May 2003 amended complaints.

In a Memorandum and Order dated October 27, 2003 (the "October 2003 Order"),[10] the Court decided the various Motions to Dismiss.  In so doing, the Court construed Plaintiffs' complaints as properly alleging only two causes of action against the City:  a § 1983 civil rights claim premised on alleged violation of Plaintiffs' Fourth Amendment right against unreasonable search and seizure, and a false arrest claim.[11]  The Court denied the City's motion to dismiss the Fourth Amendment claim, but granted the motion with regard to the false arrest claim.[12]

In the October 2003 Order, the Court also granted in part and denied in part Bradford's motion to dismiss, holding that Plaintiffs adequately had alleged a § 1983 claim against Bradford in his individual capacity for violation of Plaintiffs' search and

---

[8]  Memorandum and Order dated June 10, 2003 [Doc. # 43].

[9]  *See* Motions to Dismiss by Mokwa, City of Houston, and Bradford [*Cory* Docs. # 44, # 45, # 46].

[10]  *See* October 2003 Order [*Cory* Doc. # 53; *Ross* Doc. # 43].

[11]  *Id.* at 3 n.3, 5–6, 7.

[12]  *Id.* at 7.

seizure rights under the Fourth Amendment and a state law claim for false arrest.[13] The Court noted that while § 1983 does not provide for liability based upon *respondeat superior*,[14] Plaintiffs' allegations that Bradford "was the ultimate decision maker" for HPD at the time of the arrests and had "communicated his approval" for the plan and arrests to inferior officers "sufficiently alleged a cause of action against Bradford individually under § 1983."[15] Nowhere in the parties' filings – neither the pleadings nor the memorandums on the motions to dismiss – did it appear, or did the Court perceive, that Plaintiffs intended to plead a failure to supervise claim against Bradford

---

[13]  *Id.* at 8, 12. The Court dismissed Plaintiffs' claims against Bradford in his official capacity. *Id.* at 8.

[14]  The Court explained: "Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability." Personal involvement is an essential element of a civil rights cause of action in an individual capacity claim. *Id.* at 8–9 (citations omitted).

[15]  *Id.* at 9. In the "FACTS" section of their May 2003 complaint, Plaintiffs allege that "Bradford approved both the design and implementation of Operation ERACER," *Cory* Second Amended Complaint [*Cory* Doc. # 38], ¶ 4.11, that he "personally approved of Operation ERACER by and through communications with its Operation Commander, Defendant Aguirre," *id.* ¶ 4.12, that the "arrests . . . w[ere] conducted pursuant to an express policy of the Houston Police Department; to wit; Operation ERACER – a policy initiated and/or expressly or impliedly authorized by the Chief of Police C.O. Bradford," *id.* ¶ 4.13, and that the "policy of the Police Department . . . that [led] to the arrests of . . . Plaintiffs on August 17, 2002 violates . . . the Fourth Amendment of the United States Constitution . . . .," *id.* ¶ 4.14. In the "VIOLATION OF CIVIL RIGHTS" section of that complaint, Plaintiffs further allege that "Defendants were acting pursuant to an express and/or implied policy of the Police Department . . . authorized by its policy maker Chief of Police C.O. Bradford." *Id.* ¶ 5.2.

Plaintiffs clearly alleged in the April/May 2003 complaints a claim that Bradford ratified a constitutionally defective policy of the HPD to arrest individuals without cause. This ruling is not in issue.

individually or in his official capacity.[16]   Nothing in the October 2003 Order gave Plaintiffs license to do so.

The Court ruled that Plaintiffs could not add new claims or parties to future amended complaints, but would be permitted to "flesh out their § 1983 claims against the individual Defendants" in an amended pleading.[17]  In November, 2003, at a pretrial hearing held well after the IAD reports had been produced by the City, the Court again stated that Plaintiffs were permitted to augment their allegations in light of the IAD reports, but that the amendments were permitted only to clarify pre-existing claims.[18] In June 2004, at another pretrial hearing, the Court reiterated its ruling that leave to

---

[16]   At the end of their response to Defendants' 2003 motions to dismiss, Plaintiffs argued for additional time to amend, but neither requested a specific proposed new deadline nor stated what claims they were investigating. *See* Plaintiffs' Response to the City's, Bradford's, and Mokwa's Motions to Dismiss [*Cory* Doc. # 48], at 4–5.  Plaintiffs commented that they had not yet reviewed the voluminous documents made available to them by the City and placed in the document depository, and pointed out that documents related to an HPD Internal Affairs Division ("IAD") investigation had not been available to them prior to the April amendment deadline. *Id.*  Plaintiffs elected to wait to review documents until after the IAD report was disclosed, despite the Court's express directive that Plaintiffs had an obligation to review the City's documents before the amendments deadline on April 30, 2003, so that Plaintiffs could file amended complaints to frame the issues for discovery.  *See* October 2003 Order, at 13–14.

It is noted that, at the time of the October 2003 ruling, the Court was handling jointly with *Cory* and *Ross* a related case (*Ratliff v. City of Houston*, Civil Action No. H-02-3809) that had dozens of plaintiffs.  Those plaintiffs were pushing for a prompt trial.

[17]   October 2003 Order [*Cory* Doc. # 53; *Ross* Doc. # 43], at 14.

[18]   *See* Transcript of Nov. 11, 2003 Pretrial Hearing, at 4–5.

amend had been intended to allow Plaintiffs to clarify existing claims.[19] Notably, at the June 2004 hearing Plaintiffs' attorney stated that he "agreed not to pursue the officers individually," and that Plaintiffs' next amended complaint was "only going to be in an official capacity basis and [would] be narrow . . . [and] streamline[d]."[20]  Counsel made this representation more than eighteen months after filing these lawsuits, and long after the City had made all discovery – including the IAD reports – available.

More than twenty months after these suits were filed, Plaintiffs filed amended complaints in August 2004[21] and September 2004.[22]  These pleadings collectively are referred to as the "September 2004 Complaints."  These complaints asserted a variety of causes of action against the City and Bradford[23]— individually and in his official capacity – arising under the federal Constitution and state law.[24]  This was the first time that Plaintiffs sought to add a new claim against Bradford individually for failure to

---

[19] *See id.* at 21.

[20] *Id.*

[21] *See Cory* Third Amended Complaint [Doc. # 64]; *Ross* Second Amended Complaint [Doc. # 52].

[22] *See Cory* Fourth Amended Complaint [Doc. # 67]; *Ross* Third Amended Complaint [Doc. # 55].

[23] These complaints also assert claims against former HPD officer Mark Aguirre. As noted, Aguirre's involvement in this case is of no consequence to the pending Motion to Reconsider.

[24] *See, e.g.*, *Cory* Plaintiffs' Fourth Amended Original Complaint [Doc. # 67], ¶¶ 5.4, 6.1.

supervise his subordinates.[25]

Plaintiffs did not move for extension of the pleading amendment deadline before filing the September 2004 Complaints, did not move for leave to amend to add new claims, and did not explain why the new claims could not have been asserted earlier. When these September 2004 Complaints were filed, the Rule 16 scheduling orders provided that the fact discovery deadline was March 31, 2004, which had long passed, and Defendants' summary judgment motions were due almost immediately — on September 30, 2004.[26] Docket call in both cases was scheduled for late January 2005.

Defendants filed a motion to strike the new claims alleged in both the *Cory* and *Ross* September 2004 Complaints.[27] In December 2004, after detailed analysis, the Court permitted Plaintiffs to add theories to their Fourth Amendment "search and seizure" claims against Defendants, but granted Defendants' request to strike the new constitutional claims Plaintiffs had added.[28]   In so ruling, the Court dismissed

---

[25]   This also was the first indication that Plaintiffs sought to assert an official capacity claim against Bradford or a claim against the City for failure to supervise.

[26]   At a June 25, 2004 conference, this deadline was extended from August 13, 2004. *See* Minute Entry Order [*Cory* Doc. # 62; *Ross* Doc. # 51].

[27]   *See* Defendants City of Houston and C.O. Bradford's Motion to Strike Plaintiffs' Third Amended Original Complaint and Fourth Amended Original Complaint [*Cory* Doc. # 70]; Defendants City of Houston and C.O. Bradford's Motion to Strike Plaintiffs' Second Amended Original Complaint and Third Amended Original Complaint [*Ross* Doc. # 58].

[28]   *See* Memorandum and Order of Dec. 13, 2004 ("December 2004 Order") [*Cory* Doc. # 77; *Ross* Doc. # 61], at 7–12. More specifically, the Court held that Plaintiffs' § 1983 claims

Plaintiffs' Section 1983 claims against Bradford individually and the City for failure to supervise officers who participated in the August 2002 arrests.[29]  Now, almost three years later, Plaintiffs ask the Court to reconsider the ruling dismissing the failure to supervise claim against Bradford individually.[30]

To complete the procedural history of these cases, it is noted that following issuance of the December 2004 Order, Defendants filed complex motions for summary

---

[28] (...continued)
based on the First Amendment right to peacefully assemble, Fourth Amendment right to be free from use of excessive force, and Fifth or Fourteenth Amendment right to due process of law were new claims and were not permitted to be added at such late stage of the case.

It is noted that the December 2004 Order technically was a ruling on Plaintiffs' Motion for Rehearing [*Cory* Doc. # 73; *Ross* Doc. # 60], after the Court in November 2004 had granted Defendants' Motion to Strike on the belief that the Motion was unopposed.  *See* Order Granting Motion to Strike dated November 10, 2004 [*Cory* Doc. # 71; *Ross* Doc. # 59]. After it was discovered that Plaintiffs' lack of response was claimed to be due to a clerical error, the Court reconsidered the earlier ruling.

[29] December 2004 Order [*Cory* Doc. # 73; *Ross* Doc. # 60], at 11–12. The Court's ruling here was cursory because the failure to supervise claims against Bradford or the City were not the focus of Defendants' Motions to Strike [*Cory* Doc. # 70; *Ross* Doc. # 58] or Plaintiffs' Responses [*Cory* Doc. # 74; *Ross* Doc. # 60]. Indeed, Plaintiffs contended in their Response that they were merely adding factual allegations in support of their "[Section] 1983 claims against the individual defendants . . . ." *See* Plaintiffs' Response to Defendants' Motion to Strike [*Cory* Doc. # 74; *Ross* Doc. # 60], at 2.

[30] Plaintiffs' motion is entitled "Motion to Reconsider the Court's December 13, 2004 Dismissal of Plaintiffs' 42 U.S.C. 1983 Claim Against Chief of Police C.O. Bradford for 'Failure to Supervise' Participating Officers" [*Cory* Doc. # 174; *Ross* Doc. # 104]. To the extent Plaintiffs in their Reply to this Motion [*Cory* Doc. # 178; *Ross* Doc. # 107] now seek to resurrect the failure to supervise claims against Bradford in his official capacity or against the City, the request is far too late and is denied. *See infra* pp. 15-16.

judgment.[31] On July 27, 2005, the Court granted in part and denied in part the relief sought, *inter alia,* denying Bradford's motion for dismissal on qualified immunity grounds of all claims against him individually.[32] Bradford took an interlocutory appeal.[33] Narrow discovery continued on specific issues regarding historical events relating to custom and policy claims against the City, and relating to other HPD officer Defendants named in this and related cases.[34] The cases eventually were administratively closed pending a ruling by the court of appeals.[35]

After two years, the court of appeals dismissed the Bradford's appeal for lack of jurisdiction,[36] rejected the City's petition for rehearing, and remanded the cases.[37] This Court reopened these and all related cases, and set a final status conference for

---

[31] Motion for Summary Judgment by City of Houston and C.O. Bradford [*Cory* Doc. # 83; *Ross* Doc. # 66].

[32] Memorandum and Order filed July 27, 2005 [*Cory* Doc. # 111; *Ross* Doc. # 82], at 5–6, and Exhibit A thereto (Memorandum and Order filed July 25, 2005 in *Ratliff v. The City of Houston*, Civil Action No. H-02-3809 [*Ratliff* Doc. # 89]).

[33] Notice of Appeal filed August 22, 2005 [*Cory* Doc. # 112; Ross Doc. # 85].

[34] *See* Minute Entry Order filed October 27, 2005 [*Cory* Doc. # 119; *Ross* Doc. # 94].

[35] Order Staying and Administratively Closing Case filed March 15, 2006 [*Cory* Doc. # 124; *Ross* Doc. # 98].

[36] *See Demmler v. City of Houston*, 229 F. App'x 342 (2007); *see also* Judgment of June 4, 2007, filed in District Court July 16, 2007 [*Cory* Doc. # 171; *Ross* Doc. # 101].

[37] The court of appeals ruled that there were fact issues precluding summary judgment on Bradford's qualified immunity issues. *See id.*; Order Denying Petition for Rehearing, No. 05-20756 (July 3, 2007).

January 31, 2008. Trial is set for April 14, 2008.

## II.   LEGAL STANDARDS FOR RECONSIDERATION

The Court has authority at this interim stage in the proceedings – when in the interests of justice – to reconsider its rulings in this case. *See generally Millar v. Houghton*, 115 F.3d 348, 350-51 (5th Cir. 1997) (court's reconsideration of denial of motion for summary judgment is permissible but must be on notice to parties); *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 738 & n. 6 (5th Cir. 1993); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990). However, a motion for reconsideration "calls into question the correctness of a judgment . . . [and] is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (citation omitted). Instead, it merely serves to allow "a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.*; *see also Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). A motion for reconsideration may also allow a party to bring an intervening change in the controlling law to the Court's attention. *See Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567-68 (5th Cir. 2003). However, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet*, 367 F.3d at 479.

## III.   ANALYSIS

In their Motion to Reconsider, Plaintiffs first argue that the Court gave them permission to file amended claims after Plaintiffs saw the IAD reports. Plaintiffs appear to contend that the Court implicitly permitted them to expand their Section 1983 claims for Fourth Amendment violations to include a failure to supervise theory. This construction of the Court's rulings in 2003 and 2004 is in error and is not supported by the record.[38] The Court's October 2003 Order addressed Plaintiffs' claims in the April/May 2003 complaints, the challenges by Defendants in their motions to dismiss, and Plaintiffs' responses to those motions. The parties debated a Section 1983 claim premised on violations of Plaintiffs' Fourth Amendment right against unreasonable search and seizure and a state law false arrest claim. Nothing in the parties' briefing or the Court's October 2003 Order suggested that Plaintiffs sought or would be permitted to pursue the distinct claim of failure to supervise.[39]

Further, there is no reason to alter the Court's December 2004 Order striking

---

[38]   Plaintiffs' bolding of the Court's comments in written orders and transcripts is misleading; they fail to focus on significant material aspects of the rulings and oral statements. The Court will not address each instance of this conduct, but counsel is admonished that attention to the full ruling by the Court is required, and judicial comments must be read in context.

[39]   Plaintiffs' summary in its Motion to Reconsider confirms this conclusion. Parsing Plaintiffs' excerpts, *see* Motion to Reconsider [*Cory* Doc. # 174; *Ross* Doc. # 105], at 7–8, ¶ 4.2, reveals the absence of any indication that Plaintiffs intended in the April/May 2003 complaints to claim Bradford improperly supervised subordinates. Rather, the cited excerpts demonstrate that Plaintiffs challenge Bradford's alleged authorization of a wrongful plan to detain and arrest members of the public.

new claims in Plaintiffs' September 2004 Complaints. As to the failure to supervise claims, Plaintiffs' pleadings amounted to belated requests to extend the deadline for amendments to pleading in these cases. Plaintiffs did not in 2004, and have not now, provided persuasive reasons for amending the Rule 16 scheduling orders in these cases.[40] Plaintiffs have never offered any reason they could not frame the failure to supervise claim early in this case.

Underlying Plaintiffs' Motion for Reconsideration may be some confusion about the contours of the claims in issue. Plaintiffs have consistently alleged against Bradford individually a claim premised on his alleged personal involvement in the claimed violations of Plaintiffs' Fourth Amendment search and seizure rights.[41] They have not

---

[40] Once pretrial deadlines are established pursuant to Rule 16 of the Federal Rules of Civil Procedure, a party must show good cause to extend those deadlines. The Court of Appeals explained that the "good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (citing *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1990))). The Fifth Circuit added: "In determining good cause, we consider four factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" *Id.* at 546 (citing *S & W Enters.*, 315 F.3d at 535).

[41] *See* legal analysis of Section 1983 claim for a policy and practice violation of the Fourth Amendment by a supervisor in October 2003 Order. In summary, "[t]o succeed on a civil rights claims against a supervisor, the plaintiff must show (1) that the supervisory defendant personally participated in the constitutional deprivation or (2) that enforcement of the supervisor's policy or practice caused the alleged deprivation. To be liable based on a policy or practice, the supervisory employee must 'implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional
(continued...)

pleaded the separate cause of action for redress from Bradford's individual failure to adequately supervise his subordinates.[42] That these two claims overlap factually to some degree in that they both involve Bradford's role as Chief of Police and a decision-maker for the HPD does not entitle Plaintiffs to add a legally distinct claim that was not previously pleaded.

Plaintiffs also contend that the Court, in striking the failure to supervise claim, impermissibly imposed a "heightened pleading standard" on Plaintiffs.[43] Plaintiffs' argument is again misguided. The issue of whether Plaintiffs pleaded sufficient facts to state a claim upon which relief can be granted was not the basis for the Court's

---

[41] (...continued)
violation'; or he must know that the system was so deficient as to be unconstitutional and 'failed to properly attempt to correct' it and his inaction must have caused the plaintiff's injuries." *Id.* at 8-9 (citations omitted). *See also* discussion about qualified immunity in *Ratliff v. City of Houston*, Memorandum and Order dated July 25, 2005, Civil Action No. H-02-3809, at 60-64.

[42] As the Court explained in the December 2004 Order [*Cory* Doc. # 77; *Ross* Doc. # 61], at 11–12 n.7:  A supervisory official may be held liable for the acts of an employee upon a showing of improper supervision of subordinates. *See  Smith v. Brenoettsy*, 158 F.3d 908 (5th Cir. 1998). To impose [Section] 1983 liability on a supervisory official for the wrongful acts of a subordinate, "the plaintiff must show that:  (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Id*. at 911-12 (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1263 (5th Cir. 1986)); *accord Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000). For an official to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brenoettsy*, 158 F.3d at  912 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991)).

[43] Motion to Reconsider [*Cory* Doc. # 174; *Ross* Doc. # 104], ¶¶ 2.3, 4.1.

October 2003 or December 2004 Orders precluding Plaintiffs' addition of the failure to supervise claim. To the contrary, as to the Fourth Amendment claim, the Court permitted Plaintiffs to plead additional facts and expand their theories based on what had been learned in discovery.[44] The concept of Bradford's role as a supervisor of subordinates, as opposed to the person approving a specific challenged operation, simply was not included in Plaintiffs' pleadings until the September 2004 Complaints.[45]

Inexplicably, in their **Reply** on their Motion to Reconsider, Plaintiffs assert an

---

[44]   *See* Memorandum and Order of Dec. 13, 2004 [*Cory* Doc. # 77; *Ross* Doc. # 61], at 7–8.

[45]   Further, although not dispositive, the Court rejects Plaintiffs' contention that the Fifth Circuit's heightened pleading standard is no longer applicable in claims against individual public officials. The heightened pleading standard was overruled by the Supreme Court as to claims against municipalities and governmental entities, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir. 2006), but the Supreme Court has not altered the Fifth Circuit's requirement as to claims against individuals. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *Truvia v. Julien*, 187 F. App'x 346, *1-*2 (5th Cir. 2006); *DeLeon v. City of Dallas*, 141 F. App'x 258, *3 (5th Cir. 2005).

In addition, while Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), the United States Supreme Court recently stated that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528, n. 17 (1983)).

additional request.[46] In the Reply, contrary to the title of their motion, Plaintiffs urge for the first time that they should be allowed to assert an "official capacity" claim of failure to supervise.[47] This issue has been waived because it was not included in the Motion. In any event, the official capacity claims against Bradford as Chief of Police were dismissed by the Court in the October 2003 Order as duplicative of claims against the City.[48] The Court in December 2004 ruled, to the extent the issue was even raised, that Plaintiffs had not timely urged a failure to supervise claim against the City.[49] Plaintiffs have not properly questioned that ruling and the Court will not revisit it.

Finally, Plaintiffs now argue that regardless of any prior deficiencies on their part, they should be permitted to bring this claim in order to "be in the same position as the other plaintiffs in [two] companion cases [also arising out of the August 2002 arrests]."[50] While the Court can understand Plaintiffs' desire to be treated equally with

---

[46] Indeed, Plaintiffs' counsel has shifted strategies more than once in this case. For instance, he expressly disavowed an intention to assert claims against Bradford individually as late as June 2004, but then changed his mind when he filed the September 2004 Complaints.

[47] Plaintiffs' Reply [*Cory* Doc. # 178; *Ross* Doc. # 107], at 2-5.

[48] October 2003 Order [*Cory* Doc. # 53; *Ross* Doc. # 43], at 8 ("A suit against a City official in his official capacity is the same as a suit against the City. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Because the City is already a defendant in this case, any claims against the individuals in their official capacities are duplicative, and are dismissed.")

[49] *See* December 2004 Order [*Cory* Doc. # 77; *Ross* Doc. # 61], at 11-12.

[50] Plaintiffs' Reply [*Cory* Doc. # 178; *Ross* Doc. # 107], ¶ 14.

parties in related cases, Plaintiffs did not timely assert the claims that were raised by others. Plaintiffs were granted sufficient opportunity to conduct discovery and draft pleadings that fairly reflect the claims they wish to assert.[51] As the Court has noted, Plaintiffs made a strategic decision early in this case not to avail themselves of documents that may have permitted them to frame additional claims at an appropriate time. Further, Plaintiffs did not establish good cause in late 2003 (or in 2004) to extend the Rule 16 amendment deadline in these cases, even though they undoubtedly were aware of related cases and pleadings that were a matter of public record. The *Cory* and *Ross* Plaintiffs must live with the consequences of their strategic decisions.

## IV. CONCLUSION

Plaintiffs have offered no basis upon which to justify reconsideration of its decision to strike Plaintiffs' failure to supervise claims as untimely. Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motions to Reconsider [*Cory* Doc. # 174; *Ross* Doc. # 104] are **DENIED**. Plaintiffs may not pursue a claim against Defendant Bradford or the City premised on Bradford's alleged failure to supervise subordinate officers.

---

[51] The case to which Plaintiffs refer is *Lopez v. City of Houston*, Civil Action No. H-03-2297, which was filed on June 27, 2003. Contrary to the *Cory* and *Ross* plaintiffs, in 2003 the *Lopez* plaintiffs pleaded the legal theory and alleged facts to support a failure to supervise claim against the City. *See, e.g.*, Memorandum and Order filed February 9, 2004 [*Lopez* Doc. # 90], at 10-12.

SIGNED at Houston, Texas on this **9th** day of **November, 2007**.

_____
Nancy F. Atlas
United States District Judge